IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
   *Plaintiff,*

  v.          Case No. **2:16-cr-20032-JAR**

**LORENZO BLACK,**
**KARI CARTER,**
**ANTHON AIONO,**
**ALICIA TACKETT,**
**CATHERINE ROWLETTE,**
**DAVID BISHOP,**

   *Defendants.*

---

**Motion for Fed. R. Crim. P. 41(g) Return of Information**

---

On August 3, 2016, the Federal Public Defender developed a good faith belief that our privileged communications with clients at CCA Leavenworth are recorded by staff and, at times unknown to the defense, provided to the government. We believe CJA counsel suffers identical violations of the attorney-client privilege. What we understand is that, at least in certain visitation rooms, CCA Leavenworth is recording video of our visits with our clients.[1] Those recordings, at least in some cases, are then provided to the

---

[1] See Appx. A, pp. 12-13.

United States Attorney's Office. We do not yet know whether or when audio recordings have been or are being made.[2]

The Federal Public Defender does not represent any of the listed defendants in this case; however, at least two of our clients were named in the body of the complaint, Robert Buress and Jermaine Rayton. And the discovery identified by the USAO in this case should, as described, would include recordings of any attorney-client meeting recorded by CCA during that time period. That, in turn, is part of the discovery offered to the defendants in this case. *See July, 21, 2016, transcript of status conference in above-captioned case, attached as Appx. A.* In other words, not only does the prosecution have access to view the FPD attorney-client meetings, all counsel who are entitled to discovery, in this or related cases, have or will have access. Moreover, as the USAO has announced its intention to filed a superseding indictment adding defendants in this case as well as new independent but related indictments, time is of the essence in the Court hearing this motion.

1. **Request for access to confidential contact conferences between attorneys and clients.**

Until we are clear on the extent to which we are violating the attorney-client privilege by meeting with our clients at CCA Leavenworth, we will

---

[2] *Id.* at pp. 10-11.

2

refuse to do so. We will first ask the Court to transport our clients to the Courthouse to accommodate a confidential setting for attorney-client meetings. Otherwise, meeting with clients in an atmosphere that may waive the privilege by permitting third-party access to our communications violates the Constitution and canons of ethics.

We believe that the United States Attorney's Office for the District of Kansas has recordings of our meetings with our clients in its custody. We would be happy to be wrong. But until we are sure that we are, we can no longer conduct client visitations at CCA Leavenworth.

**2. Request for an evidentiary hearing**

We ask for an evidentiary hearing, and ask the Court to Order:

1. That CCA Leavenworth disclose its policy regarding surveillance and documentation of meetings between clients and counsel.

2. That CCA Leavenworth disclose its policy concerning the recording of phone calls between clients and counsel.

3. That CCA Leavenworth disclose how any information concerning the interactions between client and counsel is transferred to the United States Attorney's Office for the District of Kansas, or any law enforcement agency.

4. That the Court impound video recordings, audio recordings, or other record of information derived from the government possession of attorney-client meetings.

Once the evidence is presented and considered, we reserve the right to request any of the sanctions recognized by the Tenth Circuit in *Schillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).[3]

### 3. Prosecutorial interference with the right to counsel violates Due Process and the Sixth Amendment.

A defendant's unfettered and private ability to consult with counsel is essential to secure the fundamental right to due process and the protections of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). Conferences between counsel and the defendant at the CCA Leavenworth Detention Center are within the scope of the attorney-client privilege, the oldest of the privileges for confidential communications known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also In Re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006) (attorney-client privilege "dates back to the Tudor dynasty at least"). The privacy of these communications is "crucial to this relationship." *Al Odah v. United States*, 346 F.Supp.2d 1, 10 (D.D.C. 2004). The attorney-client

---

[3] Identifying as appropriate remedies the recusal of government counsel, exclusion of evidence, retrial, or dismissal. 70 F.3d at 1143.

privilege extends to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). It also extends to "at least those attorney to client communications which would have a tendency to reveal the confidences of the client." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting Kenneth S. Brown, *McCormick on Evidence* § 89 (6th ed. 2006).

Government interference with that right violates both constitutional guarantees, and constitutes structural error.

> [A] prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant, and because a fair adversary proceeding is a fundamental right secured by the Sixth and Fourteenth Amendments, we believe that absent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment. In other words, we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed. In adopting this rule, we conclude that no other standard can adequately deter this sort of misconduct. We also note that prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.

*Schillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995). This rule recognizes that the accused "does not enjoy the effective aid of counsel if he is denied the right of private consultation [.]" *Mastrian v. McManus*, 554 F.2d 813, 820–21 (8th Cir.), cert. den., 433 U.S. 913 (1977).[4] If discovery of materials provided by an attorney to a client were permitted, "[t]he effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Upjohn*, 449 U.S. at 398.

### 4. Videotaping client meetings is prosecutorial interference with the right to counsel.

The Kansas Supreme Court addressed a milder form of our problem in *Case v. Andrews*, 226 Kan. 786 (Kan. 1979). *Case* held that,

> the Lyon County jail policy of visually monitoring all consultations between attorneys and clients is an unreasonable interference with the right to confidential attorney-client communications. The confidentiality of communications between an attorney and his client who is charged with crime should be carefully protected by the courts.

---

[4] It is clear "that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation[.]" *Coplon v. United States*, 191 F.2d 749, 757 (1951); *Geders v. United States*, 425 U.S. 80 (1976); *Hoffa v. United States*, 385 U.S. 293 (1966); *Massiah v. United States*, 377 U.S. 201 (1964); *United States v. Rosner*, 485 F.2d 1213 (2nd Cir. 1973), cert. denied, 417 U.S. 950 (1974); *United States v. Brown*, 484 F.2d 418 (5th Cir. 1973), cert. denied, 415 U.S. 960 (1974); *Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953).

*Id.* at 790. Because "absent a showing of any risk to the order or security of the jail, the practice of visually monitoring an attorney-client conference when privacy is requested, is unreasonable. Such unreasonable interference violates an accused's Sixth Amendment right to effective representation by counsel." *Id.* at 791.[5]

Our situation, as we apprehend it, is a far more significant interference with the right to counsel than the circumstances considered in *Case*. The

---

[5] See also *State v. Walker*, 804 N.W.2d 284, 295 (Iowa 2011) ("in the absence of any individualized showing of a safety or security risk video surveillance violates an arrestee's right to 'see and consult confidentially' with his attorney 'alone and in private.'"); *People v. Dehmer*, 931 P.2d 460, 463 (Colo.App. 1996); *State v. Sherwood*, 174 Vt. 27, 800 A.2d 463, 466 (2002) ("The tape itself is evidence that defendant's conversation with counsel was not, in fact, private."); *Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976) ("there is no physical facility specifically set aside for this purpose in which the pretrial detainees have a right to consult privately with attorneys and witnesses. Such conditions impede the detainees' ability to prepare for trial, jeopardize the confidentiality of their attorney-client communications and invade their right to privacy."); compare 66 Fed. Reg. 55065(d) ("In any case where the Attorney General specifically so orders, based on information from the head of a federal law enforcement or intelligence agency that reasonable suspicion exists to believe that a particular inmate may use communications with attorneys or their agents to further or facilitate acts of terrorism, the Director, Bureau of Prisons, shall, in addition to the special administrative measures imposed under paragraph (a) of this section, provide appropriate procedures for the monitoring or review of communications between that inmate and attorneys or attorneys' agents who are traditionally covered by the attorney-client privilege, for the purpose of deterring future acts that could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.")

meetings between the Federal Defender or CJA counsel and our respective clients are not only visually monitored, but recorded. Those recordings are then, at least in some cases, provided to the United States Attorney's Office. The documents we review with our clients, how our clients react to those documents, and the notes are taken by client and counsel are open to government inspection and review. This arrangement chills our client's exercise of their right to counsel, as they do, and should, "be hesitant to disclose names and information relevant to the attorney's investigation and necessary to the advice sought." *Johnson-El v. Schoemehl,* 878 F.2d 1043, 1052-53 (8th Cir. 1989). Such conditions impede our clients' "ability to prepare for trial, jeopardize the confidentiality of their attorney-client communications and invade their right to privacy." *Moore v. Janing*, 427 F.Supp. 567, 576 (D. Neb. 1976), superseded on other grounds by *Bell v. Wolfish*, 441 U.S. 520 (1979), *also see United States v. DiDomenico*, 78 F.3d 294, 299 (7th Cir. 2004) ("knowledge that a permanent record was being made of the conversations . . . would make the defendants reluctant to make candid disclosures."). Allowing the government to "monitor these meetings and conduct a classification review of meeting notes flies in the face of the foundational principle of the attorney-client privilege." *Al Odah*, 346 F.Supp.2d at 11. Such government intrusion "would lay waste to the value of

the attorney-client privilege." *Id. citing Weatherford v. Bursey*, 429 U.S. 545, 554 (1977).

### 5. Inaction in the face of the government's surveillance would waive the attorney-client privilege.

The attorney-client privilege is "virtually inviolable" unless waived. *United States v. Ary*, 2005 WL 2367541 (D. Kan. 2005). Waiver may be express or implied. An "[i]mplied waiver occurs when a party claiming the privilege has voluntarily disclosed confidential information on a given subject matter to a party not covered by the privilege." *Id.*[6]

The Federal Defender believes that visiting clients at CCA, while subject to video recording, waives the attorney-client privilege. The "presence of the recording device [is] the functional equivalent of the presence of a third party," such that the attorney-client privilege is destroyed. *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir.2003).[7] We assert the privilege now,

---

[6] See also *Hanson v. U.S. Agency for International Development*, 372 F.3d 286, 293–94 (4th Cir.2004).

[7] See also *United States v. Walker*, 2011 WL 2728460 at 1 (M.D. Ala. 2011); *United States v. Mitchell*, 2013 WL 3808152 (M.D. Fl. 2013) ("Both individuals having heard the automated message, and Newby's action of affirmatively pressing a phone key to accept the calls, obviates any reasonable expectation of privacy between the attorney and client in these two calls because Newby and Mitchell each knew the calls were being recorded. Furthermore, Mitchell and Newby implicitly consented to the recording of the calls by continuing the conversations despite the warning."); *Modelle v. Fauro*, 2010 WL 624023 (N.D. N.Y. 2010).

9

because delay may cut against a later invocation.[8]

### 6. The remedies suggested are appropriate and necessary under these circumstances.

Initially, this Court has authority to grant a hearing[9] and future relief under 28 U.S.C. § 1651.[10] Rule 41(g) further provides an immediate remedy for this violation. *See* Rule 41(g). The rule provides a mechanism for a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." *Id.* Under this Rule, "[p]roperty" includes not only "tangible objects" such as "documents," but also "information." Rule 41(a)(2)(A). The video recordings at issue here are "property." The Rule's distinction between those who are aggrieved by an

---

[8] *Ary* at 7 ("While the court may have been willing to accept a claim of privilege asserted during his review of the contents of the black plastic box, now it appears that counsel has delayed too long."); *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir.1992) (noting that the privilege will be waived "if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.")

[9] "Relying on the All Writs Act, the Supreme Court explained that 'when the court considers that it is necessary to do so in order that a fair and meaningful evidentiary hearing may be held,' the court 'may issue such writs and take or authorize such proceedings with respect to development ... of the facts relevant to the claims advanced by the parties, as may be 'necessary or appropriate in aid of [its jurisdiction] ... and agreeable to the usages and principles of law.'" *Al Odah v. United States*, 346 F.Supp.2d 1, 6 (D.D.C. 2004),*citing Harris v. Nelson*, 394 U.S. 286, 289 (1969).

[10] "The Court's decision to grant an order under the All Writs Act is within the sound discretion of the court." *Al Odah v. United States*, 346 F.Supp.2d at 6.

illegal "search and seizure" and those aggrieved by the "deprivation of property" is meant to extend the Rule's protection to not only those harmed by an initially unlawful seizure, but also to those harmed by the retention of property whose seizure may have been legal[11]:

> . . . Rule 41(e)[12] provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it.

Rule 41, Advisory Comm. Note to the 1989 amendments. This Court need not decide whether institutional security concerns justified the surreptitious *monitoring* of the attorney-client meetings at issue here, or even whether such concerns justified *recording* the meetings and retention of the recordings. The Government's avowed intention to use these recordings for

---

[11] "Privileges for confidential communications are more absolute, narrower in scope, and broader in application than the Fourth Amendment exclusionary rule. As previously stated, the exclusionary rule is qualified in the sense that a government showing of probable cause can justify the issuance of a warrant authorizing a search or seizure. Under the dominant Wigmorean paradigm, privileges for confidential communications are absolute." Edward Imwinkelried, *The Dangerous Trend Blurring the Distinction Between a Reasonable Expectation of Confidentiality in Privilege Law and a Reasonable Expectation of Privacy in Fourth Amendment Jurisprudence,* 57 Loy.L.Rev.1, 7 (Spr. 2011).

[12] The 2002 amendments moved subsection (e) to (g) and made some "minor stylistic changes." *United States v. Albinson,* 356 F.3d 278, 279, n. 1 (3d Cir. 2004).

investigation or directly in criminal proceedings aggrieves the defense by violating the attorney-client privilege and the Sixth Amendment.

Under Rule 41(g), the immediate remedy return of the privileged materials to respective counsel. Until hearing evidence on the matter, we ask the Court to impound any recordings that include video of attorney-client meetings and material derived from the seizure.

                          Respectfully submitted,

                          s/Melody Brannon  
                          MELODY BRANNON #17612  
                          Federal Public Defender for the  
                          District of Kansas  
                          117 SW 6th Avenue, Suite 200  
                          Topeka, Kansas 66603-3840  
                          Phone: 785/232-9828  
                          Fax: 785/232-9886  
                          E-mail Address: melody_brannon@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Donald Christopher Oakley
Assistant United States Attorney
Office of the United States Attorney – Kansas City
chris.oakley@usdoj.gov

Erin S. Tomasic
Assistant United States Attorney
Office of the United States Attorney – Kansas City
erin.tomasic@usdoj.gov

Debra L. Barnett
Criminal Chief
Assistant United States Attorney
Office of the United States Attorney – Wichita
ebra.barnett@usdoj.gov

John Jenab
Jenab Law Firm, PA
john.jenab@gmail.com

David J. Guastello
The Guastello Law Firm, LLC
david@guastellolaw.com

Jason P. Hoffman
Hoffman & Hoffman
jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com


Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

                                          s/ Melody Brannon
                                          Melody Brannon