IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
      *Plaintiff,*

    **v.**                     Case No. **16-20032-JAR**

**LORENZO BLACK, *et al.*,**
      *Defendants.*

**FEDERAL PUBLIC DEFENDER'S RESPONSE TO THE
SECOND REPORT REGARDING TELEPHONE-CALL
AUDIO RECORDINGS (D.E. 187)**

The Federal Public Defender has no objection to the Special Master's Second Report Regarding Telephone-Call Audio Recordings.[1] But it does expose some unanswered questions. And the Report and newly available information justify the Court expanding the Special Master's inquiry. Our requests and explanation follow.

1. The Second Report identifies a group of 58 CCA inmates subject to recorded attorney-client telephone calls. Those names should now be provided to the defense to allow counsel to identify which cases and clients may be compromised. Alternatively, should the government show cause to the Court why all 58 names should not be disclosed, then counsel asks

---

[1] D.E. 187.

that FPD clients be identified to the FPD, and the same corresponding disclosure made to other defense counsel.

2. The government identified 95 "or more" CCA detainees (beyond those already indicted or identified in *Black*) who were subject to possible indictment as part of the CCA investigation.[2] This was an ongoing investigation and, presumably, not within the scope of disseminated discovery in *Black*. It is unclear whether these 95 (or more) names overlap with the 58 inmates referred to in the Second Report. It is also unclear whether the government collected telephone calls of these 95 (or more) CCA inmates as part of this investigation, independent of the telephone calls collected and disseminated in *Black* discovery. The defense asks the Court to Order the government to either a) confirm that all telephone calls collected during this or related investigations, regardless of whether it was disseminated in discovery, have been provided to the Special Master, or b) to identify and provide the additional telephone-call audio recordings to the Special Master for review.

---

[2] Tr. 7.21.16 at ("Ms. Tomasic: . . . And also about potential sources of supply, potential cooperators, other individuals involved in the drug and contraband trafficking. At this point, based on wire transfer information, the government believes that 95 inmates or more were involved in this conspiracy and 60 individuals or more on the outside working with them.").

3. The Second Report identifies 18,494 KATN. Both CCA and Securus should now be on notice that telephone calls to these numbers are attorney-client telephone calls and should not be recorded. The defense asks the Court to Order,

   3.1. CCA to mark these KATN as private and ensure that telephone calls to KATN are not recorded, and

   3.2. Securus to not record telephone calls to KATN, regardless of the facility from where the telephone calls originate.

4. Further, because the KATNs have now been identified, the defense also asks the Court to Order CCA and Securus to,

   4.1. preserve recordings to KATN and associated meta-data,

   4.2. refuse any law enforcement or prosecution request for telephone calls to KATN, except as authorized by court order, and

   4.3. notify the holders of KATN of any request for the information, including who made the request, when, and by what authority.

5. Some CCA attorney-client telephone calls that were recorded and provided to the USAO were not identified in the Second Report. The FPD expected these calls to be within the universe of recordings provided to the Special Master, but they were not.

   5.1. Petsami Phommaseng is not charged in *Black*, but in a related case that is central to this litigation and, presumably, at least ancillary to

the government's investigation.[3] Ms. Rokusek currently represents Mr. Phommaseng, and her role as his attorney was the subject of the meetings between Ms. Rokusek and Ms. Tomasic and Ms. Flannigan during the first week of August, 2016.[4]

5.2. In a separate case, *United States v. Martin*, 16-cr-20005-JAR,[5] the government provided discovery to the FPD that included CCA recorded telephone calls between Mr. Phommasang and his attorney at that time, Branden Bell.[6] Mr. Bell was an attorney with the firm of Brown & Ruprecht. That firm had asked CCA, in writing, to exempt its telephone number from recording. Yet these recorded calls were to the exempt number.

5.3. The Second Report identified several recorded telephone calls to Brown & Ruprecht at the exempt number. Those, however, include none of the calls between Mr. Bell and Mr. Phommaseng disclosed by the government in *United States v. Martin*. Moreover, the government never notified Mr. Phommaseng's counsel of the recorded calls.

5.4. The reason that Mr. Phommaseng's recorded attorney-client telephone calls were not provided to the Special Master is unclear. The Second Report identified calls reaching back to 2011, with CCA inmates not directly involved in the *Black* indictment, and with telephone calls to Ms. Rokusek.

5.5. Given the government's discrepancies in disclosing information to the Special Master,[7] the omission deserves attention. The Special Master should be given authority to determine why these telephone calls

---

[3] Tr. 8.9.16 hrng at 31.

[4] *Id.*; Def. Ex. 441

[5] AUSA Tomasic prosecuted this case, along with AUSA Catania.

[6] Mr. Bell represented Mr. Phommaseng from Feb. 24, 2015, to Sept. 14, 2015.

[7] *See* First Report, at 1 & 3.

were not included in the material provided by the government, and whether there are still recorded calls in the USAO possession or knowledge that should have been disclosed.

6. The government has now confirmed that it intentionally listened to CCA attorney-client telephone calls. Defense counsel in *United States v. Michelle Reulet,* D.Kan. 16-cr-40005-DDC, entered an appearance in *Black* as an interested party because CCA attorney-client telephone calls with Ms. Reulet were recorded and obtained by the government.[8] Ms. Reulet's counsel also filed a motion in *Reulet* for certain remedies based on the government intrusion.[9] At the December 20, 2016, hearing before Judge Crabtree, AUSA Tanya Treadway[10] confirmed that she had obtained and intentionally listened to CCA attorney-client telephone calls between Ms. Reulet and her counsel (not her current counsel of record, but former counsel and counsel in civil matters).[11] Whatever the USAO post-hoc

---

[8] *Black,* D.E. 159.

[9] *Reulet*, D.E. 812.

[10] AUSA Treadway was the USAO designated "experienced" "taint team" attorney in *Black*, entrusted with "ferret[ing] out potential attorney-client communications." Tr. 9.7.16 hrng at 35-36; D.E. 177.

[11] 16-cr-40005-DDC, D.E. 907 at 15-16; 26 ("THE COURT: . . . And I have now heard in your presence information that [AUSA Treadway] has listened to 3 of the 14 calls."); and 28 ("THE COURT: . . . . . I, for the life of me, don't know why someone from the United States Attorney's Office would listen to phone calls between a person charged with a crime in this district and her lawyer. And I'll hear from [the AUSA] on why you think that's appropriate.

justification may be, this admission should justify expansion of the Special Master's investigation into USAO policy and practice on this issue.

7. Again, there have been discrepancies in the government's production of information to the Special Master.[12] And there are record inconsistencies about the government's knowledge and use of recorded attorney-client communications. For instance, on August 23, 2016, the government told the Court that "[a]t the time of the [July 21, 2016] hearing . . . the government was unaware whether CCA actually recorded or simply monitored attorney-client meetings."[13] Yet less than two weeks later, the government told the Court: "[d]uring the status hearing on July 21st…AUSA Tomasic publicly stated . . . that the 18 terabytes of surveillance footage received from CCA contained recordings of attorney-client meeting rooms . . . ."[14] Both of these statements cannot be true.

8. Moreover, the government has been on notice that CCA was recording attorney-client phone calls since at least May 2015. That was when it

---

It may be what the law permits. But I'm not sure it's in the interest of justice. I'm reasonably certain it's not."). These calls were not disclosed to Reulet's counsel until August of 2016, when the litigation in *Black* commenced. Tr. at 25-6.

[12] *See First Report,* D.E. 183 at 1 & 3; *paragraphs 5 & 6, supra.*
[13] D.E. 120 at 8.
[14] D.E. 133 at 12.

distributed Mr. Phommaseng's recorded attorney-client calls in *Martin*. The government discovered the same thing sometime before January 22, 2016 in *United States v. Rapp*.[15] AUSA Erin Tomasic recounted this experience to the Court during a September 7, 2016 hearing. In response to discovering these calls, AUSA Tomasic explained, she contacted her professional-responsibility contact, who in turn emailed the Department of Justice's Professional Responsibility Advisory Office.[16] That Office then gave an advisory opinion, which prompted AUSA Tomasic to notify the defense attorney that his calls had been recorded and obtained by the government.[17] Yet the collection, use, and dissemination of CCA recorded attorney-client telephone calls continued.

The Court has good cause to further expand the authority of the Special Master to the "Additional, Investigative Duties" outlined in the Court's Order Appointing Special Master.[18] Specifically, the defense asks the Special Master to determine the policy and practice of the Kansas USAO in obtaining, reviewing, and disseminating attorney-client communications,

---

[15] *See* Gov. Ex. 10.
[16] Tr. 9.7.16 hrng. 25:05-19.
[17] *Id.*; Gov. Ex. 10.
[18] D.E. 146 at 7.

regardless of whether the USAO classifies the communication as privileged or not; identify particular cases and how the material was used; and mark the possible constitutional, statutory, and ethical implications.[19]

The Federal Public Defender asks the Court to grant these requests for further Orders to the government, CCA, and Securus, and to expand the scope of the Special Master's investigation, as contemplated in the Court's October 11, 2016, Order of Appointing the Special Master.

---

[19] D.E. 146 at 7; *also* D.E.182 at 4.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Melody_Brannon@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Kirk_Redmond@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Branden_Bell@fd.org

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 4, 2017, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

David R. Cohen
David R. Cohen Co., LPA
Special Master
david@specialmaster.biz

Donald Christopher Oakley
Assistant United States Attorney
Office of the United States Attorney – Kansas City
chris.oakley@usdoj.gov

Debra L. Barnett
Criminal Chief
Assistant United States Attorney
Office of the United States Attorney – Wichita
debra.barnett@usdoj.gov

Duston J. Slinkard
Assistant United States Attorney
Office of the United States Attorney- Topeka
duston.slinkard@usdoj.gov

John Jenab
Jenab Law Firm, PA
john.jenab@gmail.com

David J. Guastello
The Guastello Law Firm, LLC
david@guastellolaw.com

Jason P. Hoffman
Hoffman & Hoffman
jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com

Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

Erin C. Thompson
Foland, Wickens, Eisfelder, Roper, Hofer, PC
ethompson@fwpclaw.com

Jacquelyn E. Rokusek
Rokusek Law, LLC
rokuseklawoffice@yahoo.com

Jonathan L. Laurans
jlaurans@msn.com

Melanie S. Morgan
Morgan Pilate LLC
mmorgan@morganpilate.com

                                           s/ Melody Brannon
                                           Melody Brannon