

24400 Chagrin Boulevard
Reflections Bldg., Suite 300
Cleveland, Ohio 44122
Telephone: 216.831.0001
Facsimile: 866.357.3535
David@SpecialMaster.Law

July 10, 2017

Thomas Beall
United States Attorney
301 N. Main, Suite 1200
Wichita, Kansas 67202

Dear Mr. Beall:

    In connection with my investigation related to *United States v. Black*, case no. 16-CR-20032, please find attached several Requests for Information ("RFIs"). Please respond to these requests as soon as reasonably possible.

    Because it may take your office some time to gather the information requested, please ***do*** respond piecemeal to the various RFIs, as you gather the information. In other words, please do not wait to respond until you have gathered ***all*** of the information requested; rather, please submit the requested information as you gather it, with an explanation of which RFIs you are responding to.

    Feel free to contact me if you have any questions.

Sincerely,

David R. Cohen

**Requests for Information**

As used below, the term "accessed" should be construed broadly, and includes: sought or obtained access to, or listened to or viewed, or attempted to listen to or view, or directed another person to do these things. "Accessed" also includes receiving information indirectly, from someone else who did these things (such as an Assistant United States Attorney learning of information contained in a recording, by being given the information from an agent who accessed the recording).

Similarly, the term "document" should be construed broadly, to include any written, printed, electronic, or hard-copy material that serves to record or chronicle information.

"USAO" refers to the United States Attorneys' Office for the District of Kansas.

Where not otherwise stated, these requests seek information for the period between January 1, 2014 and May 1, 2017.

1. Please list all persons employed by the USAO (including lawyers, staff, and contractors) who, **between January 1, 2014 and May 1, 2017**, accessed audio- or video-recordings of: (a) detainees at CCA-Leavenworth; or (b) detainees at any other detention facility; or (c) any attorney.[1]

2. For each person listed in response to question 1, please: (a) list in chronological order all instances between January 1, 2014 and May 1, 2017 of that person's having accessed the recordings; and (b) explain in detail for each instance how that person obtained access to the recordings – for example, did the person seek or obtain the recordings via subpoena, email request, telephone request, presentation by an outside agency, or some other method?  The explanations should include the identity of any individuals with whom the person communicated, directly or indirectly, about obtaining access (such as law enforcement agents, CCA employees, USAO supervisors, and so on).

3. For each person listed in response to question 1, and for each instance of access, please explain: (a) why that person obtained access to the audio- or video-recordings; (b) the specific details of access requested (for example, was the request for access to recorded telephone calls made by specific individuals, or to specific telephone numbers, and so on); (c) in connection with which case(s) the access was sought (list case number and caption); and (d) the identities of the government attorneys and defense counsel associated with that case.

4. For each person listed in response to question 1, and for each instance of access, please explain: (a) whether the person accessed any recordings between a detainee and an attorney; (b) whether the person reported their access of any recording between a detainee and attorney to any other person (including the detainee, the attorney, a supervisor, a professional

---

[1] This includes the instance discussed by SAUSA Erin Tomasic, reflected in the Sept. 7, 2016 hearing transcript at 52-53; as well as the instance referred to in *Black* docket no. 276.

responsibility advisor, or a taint team); and (c) whether any such access was inadvertent or intentional or other.  Please provide details of all such access and reports.

5. For each person listed in response to question 4 who **did** access a recording between a detainee and an attorney, and for each instance of access, please state whether and how the government used any information obtained through this access in any way (including its investigative strategy, charging decisions, litigation posture on bond, prosecution of or defense against motions, plea negotiations, strategy at trial, positions at sentencing, or in any other way; and regardless of whether any such governmental decision, strategy, or position was motivated wholly or only in part by such information).

6. For each instance of access listed in response to question 2, please list each person employed by any other entity (such as the United States Marshals Service, the United States Secret Service, the Internal Revenue Service, the Drug Enforcement Agency, the Federal Bureau of Investigation, the Kansas Bureau of Investigation, and so on) whom the USAO knows did also obtain access to that recording.

7. Please state what were the policies between January 1, 2014 and May 1, 2017 of the USAO regarding use of a taint team (a/k/a filter team), and provide copies of documents evidencing those policies.  Further, please state: (a) whether a taint team was in place to review recordings obtained by the grand jury subpoenae (i) dated March 28, 2016, requesting production of telephone calls recorded at CCA-Leavenworth and (ii) dated April 12, 2016 requesting production of video recorded at CCA-Leavenworth; (b) if there was no such taint team, why not; and (c) if so, who was on the taint team, when it was constituted, what protocols or guidance the team was given to follow, and any analyses, reports, or conclusions the team produced or reached.  Similarly, please answer questions 7(a, b, & c) regarding any other recordings obtained by the USAO through means other than these two grand jury subpoenae.  Please provide copies of all documents evidencing these statements.

8. For each instance of access listed in response to question 2, please provide copies of all documents discussing in any way each instance of access.  This includes subpoenae used to obtain access, emails making requests for access, memos discussing the accessed recordings, and so on.  Please list the authors and recipients of each document, if not obvious.

9. Please produce transcripts of the following grand jury proceedings: (a1) when the two subpoenae referred to in question 6 were requested or presented; (a2) when any evidence obtained from the two subpoenae referred to in question 7 was presented to the grand jury for any reason (in connection with *any* case or investigation, not just *Black*); and (b1) when the February 2016 subpoena regarding Rokusek's fees was requested or presented; (b2) when any evidence obtained from the February 2016 subpoenae regarding Rokusek's fees was presented to the grand jury for any reason (in connection with *any* case or investigation, not just *Dertinger*).

10. Please list all persons employed by the USAO (including lawyers, staff, and contractors) who, between January 1, 2014 and May 1, 2017, used the Securus Call Platform to obtain access to telephone calls of inmates at: (a) CCA-Leavenworth, or (b) any other detention facility.

11. During the September 7, 2016 hearing, SAUSA Erin Tomasic stated she sought approval to perform a 'controlled buy' in one of the attorney-client visitation rooms at CCA-Leavenworth. Please provide: (1) copies of the USAO's and/or DOJ's policy on 'controlled buys,' and state whether this policy requires 'controlled buys' to be video- or audio-recorded; and (2) copies of any documents regarding the seeking of, or denial of permission to proceed with, or otherwise discussing, this particular 'controlled buy.'

12. Please provide copies of the following documents: (a) any requests made to the DOJ, including the DOJ's Office of Professional Responsibility (OPR), for opinions or guidance regarding the obtaining, possession, review, or use of any attorney-client communications by the USAO; (b) any opinions, notices, instructions, regulations, or guidance from DOJ or OPR to the USAO regarding the obtaining, possession, review, or use of any attorney-client communications; (c) any opinions, notices, instructions, regulations, or guidance from DOJ or OPR to the USAO regarding whether any person employed by the USAO (including lawyers, staff, and contractors) engaged in any unethical conduct, or a violation of any rule of professional conduct or the U.S. Attorney's Manual, relating to the obtaining, possession, review, or use of any attorney-client communications; and (d) any opinions, notices, instructions, regulations, or guidance issued by USAO supervisors regarding its legal or ethical responsibilities relating to obtaining, possession, review, or use of any attorney-client communications. This request includes documents related to any instance where any member of the USAO self-reported to DOJ or OPR regarding the requesting, obtaining, possessing, or accessing of attorney-client communications.

13. Please produce all communications and documents sent or received by all persons employed by the USAO (including lawyers, staff, and contractors) regarding meetings between Jackie Rokusek and Richard Dertinger at CCA-Leavenworth.

14. Please produce a list of every instance, between January 1, 2014 and May 1, 2017, where the USAO (a) pursued the forfeiture of attorney fees, or (b) asserted (formally or informally) that a defense attorney should withdraw from representation of a criminal defendant due to a conflict of interest. For each such instance, please identify the case name and number, the defense attorney at issue, the USAO personnel who pursued forfeiture and/or made the assertion, and a summary of the reason for pursuing forfeiture and/or for assertion of conflict.