## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 16-20032-JAR |
| LORENZO BLACK, KARL CARTER, ANTHON AIONO, ALICIA TACKETT, AND DAVID BISHOP, | |
| Defendants. | |

### MEMORANDUM AND ORDER

Before the Court is the Federal Public Defender's ("FPD") Motion to Reconvene Evidentiary Hearing (Doc. 536).  The government has responded opposing the motion, or in the alternative, asks the Court to limit the scope of the hearing.  The Court heard argument from the parties at a status conference on August 1, 2018, and indicated its intent to grant the FPD's motion.  For the reasons stated on the record and supplemented by this Order, the Court grants the FPD's motion to reconvene the May 15, 2018 hearing.

On October 25, 2017, the Court ordered this matter be set for hearing on November 28, 2017, to discuss Special Master David Cohen's findings concerning the government's failure to comply with the Phase III investigation and the appropriate responses and/or remedies for such; and to consider at this hearing any other issues the parties may want to address related to the Phase III investigation.[1]  The hearing was continued and the government ultimately filed a Petition for Writ of Mandamus with the Tenth Circuit Court of Appeals that delayed the hearing. The Tenth Circuit granted the government's petition in part, authorizing Phase III of the

---

[1]Doc. 300.

investigation and any inquiries surrounding it, but limiting the scope "to matters related to defendants before the court in *United States v. Black*, No. 16-20032-JAR, and to other parties in *Black* who have filed Rule 41(g) motions in that proceeding."[2]  The previously set hearing was eventually rescheduled to commence on May 15, 2018.

On May 16, 2018, after a full day of evidence, the parties asked the Court to recess the hearing to allow them to work toward an agreed resolution of outstanding issues related to the Special Master's investigation.  After the recess, United States Attorney Stephen McAllister announced to the Court that his office and the FPD hoped to reach an agreement on a proposed standing order with the help of the Special Master, and that the government would seek to dismiss Defendants Carter and Bishop.  He continued:

> The government would also anticipate that for the most part then the Special Master and the Federal Public Defender's Office would—they may have a couple more witnesses, but that this hearing would largely then be adjourned and we could set a date in the future for a status conference.  And if we are unable to work out things, <u>including some possible additional retrospective relief</u>, then we could come back to the Court, if necessary, to continue the hearing.[3]

The parties proceeded to stipulate to the admission of certain exhibits.

Assistant United States Attorney Steven Clymer, assigned as a Special Attorney for the United States to this matter by the Deputy Attorney General's Office, stated: "if things don't work out the way everyone hopes and we re-open the hearing, the government reserves its right to make relevance objections to all these exhibits."[4]  Federal Public Defender Melody Brannon further explained:

---

[2]Doc. 398 at 2.

[3]Doc. 483 at 325:12–20 (emphasis added).

[4]*Id.* at 328:13–16.

> The other agreement we have is that the witnesses who have
> testified or been subpoenaed will remain under sequestration.  And
> we've talked to the Court about a couple of exceptions pertaining
> to Mr. McAllister and Mr. Slinkard on that, but I believe that
> covers what we have to present to the Court.[5]

In other words, all parties ended the May 16, 2018 hearing with the understanding that the

hearing was to be held in abeyance, not recessed, pending resolution of the issues on which the

parties wished to continue their dialogue.  This included "some possible additional retrospective

relief."  And all parties understood that if an agreement did not come to fruition, the hearing

would be reconvened.

For two months, the FPD and the United States Attorney's Office worked diligently and

in good faith toward resolution of matters impacted by this litigation by agreement, including

jointly proposing a Standing Order that would deal with prospective relief.  Also, the parties

discussed retrospective relief for previously-sentenced defendants outside of this case, whose

meetings with or outgoing telephone calls to counsel were recorded by the CoreCivic detention

facility and later produced to the USAO.  To that end, the undersigned approved the parties'

jointly proposed Standing Order 18-3 on July 17, 2018, which

> appoints the Federal Public Defender to represent any defendant
> from the District of Kansas who may have a post-conviction Sixth
> Amendment claim based on the recording of in-person attorney-
> client meetings or attorney-client phone calls by any holding
> facility housing federal detainees within this District. The FPD is
> appointed to review potential cases regardless of whether the FPD
> represented the defendant in earlier District Court proceedings.
> The FPD will alert the Court to any disqualifying conflicts and will
> obtain the consent of the defendant before filing any petition for
> relief. Furthermore, the FPD is authorized to raise any other claims
> in the interest of the defendant.[6]

---

[5] *Id.* at 328:23–329:3.

[6] Standing Order 18-3.

But on July 27, 2018, the Special Master received a letter from Deputy Attorney General Rod J. Rosenstein, with copy to the remaining Defendants' attorneys in this case, informing the Special Master of the Department of Justice's ("DOJ") position in "the *United States v. Black* litigation and the Special Master investigation."[7]  The letter explains that the DOJ would not approve "blanket sentencing reductions absent evidence of particularized harm."[8]  Mr. Rosenstein explained that "[i]f any defendant has a valid claim, we will seek either to negotiate a resolution with counsel representing the individual defendant's interests, or to address it in litigation involving the aggrieved defendant."[9]  The letter concludes by addressing the DOJ's position going forward in "this matter":

> The Department has shifted responsibility for this matter to an attorney who did not participate in the conduct at issue, and we will continue to cooperate with you in pursuing any credible evidence of misconduct.  The Department is open to working with you as a mediator to further identify, refine, and possibly resolve issues in the litigation.  If the Court finds that there is a basis to doubt the integrity of particular Department employees, we have no objection to the employee responding to questions focused on the issue of whether he or she improperly obtained, watched, or listened to, and used privileged communications.  We could not acquiesce in allowing defense attorneys to question prosecutors about other aspects of their work in the absence of credible evidence of wrongdoing, nor would we approve unwarranted sentence reductions as a mechanism to avoid unwarranted discovery.[10]

The Court addressed this letter and its many questions about it with Mr. Clymer at the August 1 status conference.  Ms. Brannon outlined the many potential cases involving defendants outside of this case that her office is investigating—hundreds of potential cases under

---

[7] Ex. 555 at 1.

[8] *Id.* at 2.

[9] *Id.*

[10] *Id.*  Mr. Rosenstein did not define the terms "matter," or "litigation," in his letter.  Mr. Clymer could not clarify these references for the Court at the August 1, 2018 status conference.

28 U.S.C. § 2255.  At this point however, Ms. Brannon indicates that she will not negotiate with the DOJ regarding these cases, and states that she will now be asking that these Defendants' convictions be vacated, rather than their sentences reduced.  She also asks that the evidentiary hearing be resumed, per the parties' agreement in May.

The Court grants the FPD's motion.  The May 15–16 evidentiary hearing was never adjourned; it was merely held in abeyance to give the parties time to negotiate.  Witnesses remain sequestered.  The parties understood that if the negotiations fell through, the hearing would resume and that is exactly what happened.  As the Court stated on the record on August 1, it intends to take into consideration feedback from all interested parties about the proposed Standing Order governing prospective relief on these issues before it is approved.  But the Court must conclude the evidentiary record that began on May 15, 2018, in order to resolve pending motions in this case, and in order to conclude Phase III of the investigation within the scope authorized by the Tenth Circuit.  The Court will set this matter for a status conference forthwith to discuss a hearing date.

**IT IS THEREFORE ORDERED BY THE COURT** that FPD's Motion to Reconvene Evidentiary Hearing (Doc. 536) is **granted**.

**IT IS SO ORDERED.**

Dated: August 6, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE